INGRAM *v.* THE STATE.

No. 15084.  FEBRUARY 8, 1945.

834

*D. D. Veal,* for plaintiff in error.

*T. Grady Head,* attorney-general, *C. S. Baldwin Jr.,* solicitor-general, and *Maud Saunders,* contra.

JENKINS, Presiding Justice. 1. It cannot be said that the verdict as rendered was without evidence to support it. The evidence does not disclose that, when James Dunn first accompanied the defendant back to his house in order that the defendant might obtain and repay the two dollars borrowed by him from James, any aggressive words or disorder of any kind occurred. On the return of James Dunn soon thereafter (instead of in the "evening," as invited), accompanied by Jerry Dunn who was his uncle, and by Woodrow Reid, it appears from both of these witnesses as well as from Will Lawrence, who lived next door in the rear of the defendant's home, that the deceased was apparently ·unarmed; and that, despite the admonition of Lawrence, and despite the declara-

tion of the deceased that they did not come to raise any disturbance, but only after the two dollars, the defendant immediately fired upon the deceased, making the declaration, "get out of here." While counsel for the defense makes a strong and ingenious argument, that under all the surrounding facts and circumstances, including the condition of the defendant's invalid mother, the killing was justifiable as having been perpetrated against one who (in the language of the Code, § 26-1011), manifestly intended and endeavored in a riotous and tumultuous manner to enter the habitation of another for the purpose of assaulting or offering personal violence to some person dwelling or being therein, we cannot hold, as a matter of law, that, from the testimony and all the proved surrounding facts and circumstances, such was the case; but, on the contrary, the jury was authorized to find, as they did, that the defendant was guilty of murder as defined by the Code and given in charge. Accordingly, the general grounds of the motion for new trial are without merit.

2. The court, after giving in charge the legal definition of murder, and the definition of express and implied malice, instructed the jury as follows: "Legal malice is not ill will or hatred. It is an unlawful intention to kill, without excuse, justification, or mitigation, which intention, however, must exist at the time of the killing alleged, but it is not necessary for that intention to exist for any length of time before the killing. In legal contemplation, a man may form the intention to kill, do the killing instantly, and regret the deed as soon as it is done. Legal malice is the intent unlawfully to take human life where the law neither mitigates nor justifies the killing. In other words, gentlemen, murder is the intentional killing of a human being by the intentional use of a weapon in a manner that, as used at the time, is likely to kill, and a killing also without excuse, justification, or mitigation." The defendant excepts to the quoted excerpt from the charge because it is at variance with and conflicts with the definition of murder which had been previously given, in that it excludes the element of "malice aforethought," lacks the element of unlawfulness, and omits the requirement that the killing be in the peace of the State. It has often been held by this court that the term, "malice aforethought," does not mean that an interval of time must transpire between the unmitigatedly illegal intent to

kill and the perpetration of the act of killing. If at the time of the killing such a purpose and intent does exist, it must have existed prior to the killing. The charge excepted to is in this respect almost identical with the instructions approved in *Long* v. *State,* 127 *Ga.* 350, 354 (56 S. E. 444). Nor did the language of the extract leave out the element of unlawfulness, but it specifically referred to a killing that was without excuse, justification, or mitigation, thus excluding all reference to cases of voluntary manslaughter. The same observation can be made as to the point that the definition of legal malice failed to take into account the definition of murder, already given in charge, which excludes killing done "in the peace of the State," that is, not in military service or in obedience to duties legally imposed in putting down riots or insurrection.

3. Another ground of exception is that the judge, in charging upon the subject of voluntary manslaughter, failed to include a reference, as he did in charging upon the offense of murder and justifiable homicide, to the doctrine of reasonable fear. This ground of the motion is without merit. *Cargile* v. *State,* 137 *Ga.* 775 (4) (74 S. E. 621); *Ellison* v. *State,* 137 *Ga.* 193 (6) (73 S. E. 255); *Jones* v. *State,* 193 *Ga.* 449 (2) (18 S. E. 2d, 844).

4. Exception is taken to the following excerpt from the charge: "Justifiable homicide is the killing of a human being in self-defense or in defense of habitation, property, or person, against one who manifestly intends or endeavors by violence or surprise to commit a felony on either, or against any persons who manifestly intend and endeavor in a riotous and tumultuous manner to enter the habitation of another for the purpose of assaulting or offering personal violence to any person dwelling therein. And in this connection I read you § 72 of the Penal Code of this State: 'If, after persuasion, remonstrance, or other gentle measures used, a forcible attack and invasion of the property or habitation of another cannot be prevented, it shall be justifiable homicide to kill the person so forcibly attacking and invading the property or habitation of another; but it must appear that such killing was absolutely necessary to prevent such attack and invasion, and that a serious personal injury was intended, or might accrue to the person, property, or family of the person killing.' I also read to you, gentlemen, § 74 of the Penal Code of this State, which provides: 'Parents and

children may mutually protect each other, and justify the defense of the person or reputation of each other;' and I charge you, in this connection, that the protection of a mother would come within the provisions of the section which I have just read, that is, the protection of the mother by the defendant. A bare fear of any of those offenses, to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable man, and that the party killing really acted under the influence of these fears and not in a spirit of revenge. The term felony as used in this connection means an offense for which the offender, on conviction, shall be liable to be punished by death or imprisonment in the penitentiary, and not otherwise." The exception to this portion of the charge is made in the following language: "Movant avers that, while said charge was substantially accurate as abstract propositions of law, it was error for the court to instruct the jury on justifiable homicide under the various principles above given, and then give in addition thereto and immediately in connection therewith any definition of the term felony, without explaining to which portion of said charge such definition was applicable, and without instructing the jury that the term felony applied only to the first defense referred to, and did not apply to the other defenses set out in said charge. Movant contends that, in giving said definition of the term felony immediately following and in connection with the charge on justifiable homicide just preceding it, [the court] made it appear to the jury that the term felony applied to said charge in its entirety, and probably misled the jury into believing that the defendant would not be justified in killing the deceased in any event except to prevent the commission of a felony." It will be noted that, in the beginning of this excerpt, the jury was told that the killing of one who manifestly intends by violence or surprise to commit a felony against the person, property, or habitation of another is justifiable; then, beginning with the disjunctive "or," the jury was also instructed that the killing would be justifiable if inflicted against one who manifestly intends in a riotous and tumultuous manner to enter the habitation of another for the purpose of assaulting or offering personal violence to any person dwelling therein. It is true that it was only after elaborating this latter portion of the

charge, in accordance with the provisions of other related Code sections, that the judge did, as complained of, define the meaning of the word felony as it had been previously used. Whether or not this procedure on the part of the judge could ordinarily have been confusing, we do not think that in this case it could possibly have been so, since the judge, in his full, fair, and clear instructions, not only repeated, in the alternative, the two justifications indicated after the definition of felony had been given, but charged the jury, in the same general connection, as follows: "I charge you, gentlemen of the jury, that a person may be justifiable in killing to prevent his habitation from being entered through violence or surprise by persons attempting to enter in a riotous manner, even though they have no actual or apparent intention of committing a felony therein, but intend merely to commit a misdemeanor upon the slayer or some person dwelling in the habitation."

*Judgment affirmed. All the Justices concur, except Wyatt, J., absent because of illness.*